# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILTON FREDERICK BLAND,**

      **Plaintiff,**

**vs.**                                                  **Civil Action No. 5:11cv157**
                                                        **Judge Stamp**

**JAMES RUBENSTEIN, D.O.C. Commissioner;**
**JAMES SPENCER, N.C.F.[1] [sic] Jail Administrator;**
**KAREN PSZCZOLKOWKSI, A.W.O.;**
**MICHAEL PSZCZOLKOWKSI, Recreation**
**Director/Acting Warden of Prog [sic];**
**GREGORY YAHANKE, Warden of Programs;**
**RICHARD WINDT, A.C.A. Manager;**
**ROBERT YOCUM, N.C.F. Kitchen Sup.;**
**EDWARD LITELL, Lt. Kitchen and Sanitation/**
**Maintenance; JOHN OR JANE DOE, American**
**Correctional Association; JOHN OR JANE**
**DOE, Regional Jail Authority[2] [sic]; JOSEPH**
**NEUBAUER, President, Aramark Corporation;**
**MARK GEDDLES, General Manager,**
**Aramark Corp.; and EVELYN SEIFERT, Warden,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 7, 2011, the plaintiff filed this action under 42 U.S.C. § 1983 against the

Northern Regional Jail and Correctional Facility ("NRJ&CF") and Nickey Seifert, a Unit

Manager there. The following day, plaintiff was sent a Notice of Deficient Pleading, giving him

21 days to correct certain noted deficiencies with his pleadings. On November 15, 2011, plaintiff

moved for a 60-day extension of time to correct his deficient pleadings, *inter alia,* a complaint on

---

[1] The correct name of the facility that defendant James Spencer is the Administrator for is the Northern Regional Jail and Correctional Facility.

[2] The correct name of the Regional Jail Authority is the West Virginia Regional Jail and Correctional Facility Authority.

a Court-approved form. By Order entered November 22, 2011, that extension of time was granted, giving plaintiff until January 23, 2012 to correct his deficient pleadings. On December 8, 2011, the plaintiff filed his Prison Trust Account report and a "Notice of Claims," pursuant to WV Code §§55-7B-6 and 55-17-1, alleging claims against unspecified John and Jane Doe defendants; James Rubenstein; Evelyn Seifert; Richard Wendt; Michael Pszczolkowski; Gregory Yahanke; Karen Pszczolkowski; Robert Yocum; John or Jane Doe Regional Jail Authorities; American Correctional Association; Aramark Corporation; Joseph Neubauer; Mark Geddles; and James Spencer. On December 16, 2011, the plaintiff filed another "Notice of Claims" pursuant to WV Code §§55-7B-6 and 55-17-1, adding allegations against defendants Chad Malarski and NRJ&CF, as well as a Motion to Suppress Removal from Facility. By Order entered December 22, 2011, plaintiff's motion to suppress his removal from the facility was denied. On January 9, 2012, plaintiff filed a letter motion to remove Nickey Seifert as a defendant in the case, along with a court-approved form complaint, a 195-page document, attachments inclusive, along with a motion to add 9 more pages to his "statement of claims." By Order entered January 11, 2012, plaintiff was granted leave to exceed L.R.P.L 3.4.4's page limit by no more than 10 pages and directed to re-submit his court-approved form in compliance with the page restrictions set forth in L.R.P.L 3.4.4. by February 2, 2012, or risk having his complaint stricken from the docket.

On January 25, 2012, plaintiff filed a letter motion requesting either an Order directing the prison to provide him with free copies or an Order directing the Court to provide his copies for him. On January 30, 2012, the plaintiff filed a "shortened version" "Notice of Claims" pursuant to WV Code §§55-7B-6 and 55-17-1, which appeared to be a quasi-amended complaint, a list of allegations with no claim for relief, setting forth some new claims and elaborating and reiterating his claims already raised against defendants Evelyn Seifert; James Rubenstein; James

Spencer; Karen Pszczolkowski; Michael Pszczolkowski; Gregory Yahanke; Richardt Windt; Robert Yocum; Edward Litell; John or Jane Doe American Correctional Association; John or Jane Doe policy-makers at the NRJ&CF; Aramark Corporation; Joseph Neubauer; and Mark Geddles. Plaintiff also filed as a letter motion requesting that defendants Nickey Seifert and Chad Malarski be removed from the action, along with the claims stated against Malarski, in order to "eliminate 19+ pages."

On February 8, 2012, because plaintiff had yet to resubmit his court-approved form in compliance with L.R.P.L. 3.4.4, an Order was entered, granting in part and denying in part plaintiff's motion to have his previously filed court-approved form complaint be accepted with claims against certain defendants merely overlooked in order to comply with the L.R.P.L.'s page restrictions; granting plaintiff's motion to remove defendants Nicky Seifert and Chad Malarski from the action; granting plaintiff's letter motion to relieve him of the obligation to provide sufficient copies of his complaint to serve all defendants; and again directing the plaintiff to re-file his court approved form in compliance with L.R.P.L. 3.4.4's page restrictions by February 21, 2012, or risk dismissal of his case. Plaintiff's February 14, 2012 letter motion for an extension of time in which to file his court-approved form was granted by Order entered February 21, 2012, giving him until March 20, 2012 to comply.

On February 22, 2012, plaintiff finally filed the court-approved form in compliance with the L.R.P.L.

On February 28, 2012, because the plaintiff had still failed to comply with the Notice of Deficiency by requesting to proceed as a pauper or provide his Consent to Collect, an Order to show cause was entered, giving him until March 12, 2012 to show cause why his case should not be dismissed without prejudice. On March 12, 2012, plaintiff filed a letter response to the show

cause order, saying "I Give [sic] my promission [sic] to collect," enclosing another Prison Trust Account Report,[3] and an IFP application and Consent to Collect on forms approved by the Southern District of West Virginia.[4] On March 13, 2012, a new Notice of Deficient Pleading was issued, directing the plaintiff to file an IFP application, Consent to Collect and Prison Trust Account Report or risk dismissal of the case. An Order to Show Cause was entered the same day, directing the plaintiff to file the above-noted IFP documents by March 17, 2012. On March 21, 2012, the plaintiff filed his IFP documents, and by Order entered March 28, 2012, the plaintiff was granted permission to proceed as a pauper but directed to pay an initial partial filing fee by April 25, 2012. On April 13, 2012, the plaintiff paid the fee.

On April 30, 2012, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, removing the NRJ&CF and the Regional Jail Authority as defendants; summonses were issued for the remaining defendants, except for the John and Jane Does. The plaintiff was given 30 days in which to identify them, and warned they would be dismissed from the action unless he complied. On May 22, 2012, plaintiff filed a letter motion seeking to amend his complaint to add an additional claim and asking for an extension of time to identify the John and Jane Doe defendants.

On May 31, 2012, the defendants Edward Litell, Chad Malarski, Karen Pszczolkowski, Michael Pszczolkowski, James Rubenstein, Evelyn Seifert, Nickey Seifert,[5] James Spencer,

---

[3] This new copy of plaintiff's Prison Trust Account Report, unlike the one the plaintiff had already provided on December 8, 2011, was not on a court-approved form.

[4] Plaintiff was previously provided with copies of the correct forms for the Northern District with the November 8, 2011 Notice of Deficiency.

[5] Despite this Court's February 8, 2012 Order (Dkt.# 23) granting plaintiff's January 30, 2012 motion (Dkt.# 22) to voluntarily remove Chad Malarski and Nickey Seifert as defendants from this action, counsel for the NRJ&CF defendants included both Chad Malarski and Nickey Seifert in its motion to dismiss.

Richard Windt, Gregory Yahanke, and Robert Yocum (collectively, the NRJ&CF defendants) filed their First Motion to Dismiss Plaintiff's Complaint with a memorandum in support. On June 1, 2012, the defendants Joseph Neubauer, Mark Geddes and Robert Yocum (collectively, the Aramark defendants) filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support. On June 5, 2012, the Aramark defendants filed a Motion for Leave to File Substitute Executed Affidavits. Because the plaintiff was proceeding *pro se,* the Court issued two <u>Roseboro</u> Notices on June 7, 2012, advising the plaintiff of his right to file responses to the defendants' motions to dismiss or for summary judgment. An Order was also entered, denying plaintiff's motion to amend his complaint and for an extension of time in which to identify the John and Jane Doe defendants, and another Order was entered, granting the Aramark defendants' motion for leave to substitute executed affidavits.

On June 14, 2012, the plaintiff moved for an extension of time in which to respond to both groups of defendants' motions to dismiss or for summary judgment. By Order entered on June 15, 2012, plaintiff was granted an extension of time until August 13, 2012, in which to file his responses to the two groups of defendants' motions to dismiss or for summary judgment. On July 30, 2012, plaintiff filed another motion for a further extension of time in which to respond to the defendants' motions to dismiss or for summary judgment.

On August 15, 2012, the plaintiff filed a response to the NRJ&CF defendants' First Motion to Dismiss. On August 24, 2012, the plaintiff filed a response to the Aramark defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On August 29, 2012, the Aramark defendants filed a Reply to the plaintiff's response.

## II. <u>The Pleadings</u>

**A. The Complaint**[6]

In his complaint, the plaintiff states multiple claims and Eighth Amendment violations, alleging unsanitary and unlivable conditions at the NRJ&CF, asserting the following:

1. The NRJ&CF has no dining hall, thus, it requires inmates to eat in the housing unit. Due to the poor ventilation system, dust particles and dirt fall from the upper tiers of the unit, contaminating inmates' food while they eat.

2. Food served at the NRJ&CF is unsanitary. Cups are not clean. Food spills from trays cause cross-contamination onto other trays. The food is served at incorrect temperatures because the food carts are old and unheated. Additionally, kitchen workers are not provided with proper clothing while serving food.

3. Food served at the NRJ&CF is unhealthy, inadequate, and not fresh. Fresh fruits are not provided, salads are wilted and never chilled. The food is poor quality "chicken scratch." High cholesterol "lower processed meats" are served, increasing inmates' risk of diabetes and other health problems. Further, these processed meats contain "cancer causing elements." The inmate kitchen workers are directed to "cut corners" by "shaking the spoon" when serving, to ensure smaller portions, further endangering inmates' health.

4. A night light remains illuminated twenty-four hours a day in the plaintiff's cell. The plaintiff is unable to turn the light off. Consequently, the night light prevents the plaintiff from sleeping soundly, endangering his health.

---

[6] The plaintiff has filed multiple versions of what could constitute complaints: his first complaint (Dkt.#1) was not on a court-approved form; his first "Notice of Claims," (Dkt.# 10, a 45-page long document filed on December 8, 2012; his second "Notice of Claims," a 4-page document filed on December 16, 2011 (Dkt.# 12); his first court-approved form complaint, a 195-page document, attachments inclusive, filed on January 9, 2012 (Dkt.# 16); his third "Notice of Claims," a 7-page document filed on January 30, 2012 (Dkt.# 21); and finally, his second court-approved form complaint which finally complied with the L.R.P.L.'s page restrictions, filed 3 ½ months after he initiated this action. (Dkt.# 28). Because the final court-approved form complaint is the only one filed in compliance with the Federal Rules of Civil Procedure and the L.R.P.L., it is the only one being given review.

5. Cell toilets have sewage drainage and back flush problems. When an inmate flushes the toilet in his cell, sometimes the toilet flushes into the toilet of the neighboring cell before finally draining.

6. The cell ventilation system is inadequate and dangerous. There are no intake vents, only outflow vents, and thus there is no fresh air to push out and recirculate the stale dormant air. This dormant air could potentially cause health problems as well as the spread of disease.

7. The plaintiff has been denied proper exercise areas, proper exercise equipment, and whenever housed on C2 Housing Unit, was routinely denied passive recreation.

8. The NRJ&CF is placing general population inmates alongside protective custody inmates. Plaintiff contends this creates a substantial risk of violence.

9. The showers in the housing units are unsanitary because black mold grows in them; inmates are denied adequate cleaning supplies to "sterilize and articulate" the mold, causing "several outbreaks of M.E.R.S.A.[7] [sic]" and other health issues.

10. Inmate grievances are routinely ignored and inmates who file them are retaliated against.

As relief, the plaintiff requests monetary damages in the amount of ten thousand dollars ($10,000.00) from each named defendant, and an array of injunctive relief: he requests that an unannounced federal inspection be conducted at the NRJ&CF, and that he be permitted to walk through with the inspector, to point out NRJ&CF's many problems. Further, he asks that the Court to "force" the NRJ&CF to conduct various reforms of its facilities and practices including: the installation of a new dining hall; providing healthier food; replacing the current food service; forcing all food preparation staff to wear appropriate and sanitary clothing; correct sewage

---

[7] Presumably plaintiff is referring to Methicillin-Resistant Staphylococcus Aureus, or "MRSA."

issues; eradicate the black mold; correct ventilation problems; provide passive recreation on the C-2 Pod; and improve the exercise facilities.

**B. NRJ&CF Defendants' First Motion to Dismiss**

The defendants' assert that the plaintiff has not experienced an Eight Amendment violation related to cruel and unusual punishment. Accordingly, the defendants argue that the plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Procedure for failing to state a claim. In their motion, the defendants contend:

1. The plaintiff is no longer housed at the NRJ&CF, thus all his claims are moot.

2. The plaintiff is afforded an adequate dining area.

3. "Dirty cups" do not rise to the level of a constitutional violation. Moreover, the problem is not dirt, but rather, mineral deposits causing water scale buildup; corrective measures have already been implemented to address it.

3. Food served to inmates at the NRJ&CF meets proper guidelines regarding quality and amount. Moreover, food can only give rise to a constitutional violation if the food is unfit for human consumption.

4. The 5-watt night light in plaintiff's cell does not rise to the level of a constitutional violation. The night light is for the plaintiff's and correctional officers' safety.

5. The plumbing system has a minor design flaw which, on occasion, allows minimal back flush when conditions are exactly right, however, this does not rise to the level of a constitutional violation.

6. A new ventilation system was installed in 2010. There is an air intake and return air associated with each cell. Moreover, the ventilation system is inspected regularly and approved by the State Fire Marshall.

7. While housed in the C2 housing unit, the plaintiff was provided recreation on the recreation yard between 8:30 to 10:30 a.m., 1:30 to 3:30 p.m., and 5:30 to dusk. Usually, the plaintiff may participate during all hours.

8. There is no level of high violence or psychological injury that allows plaintiff to state a claim regarding protective custody and mainline co-mingling of inmates.

9. Every defendant is entitled to qualified immunity against the plaintiff's claims.

## C. **Aramark Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment**

The Aramark defendants argue that the plaintiff has failed to set forth any specific allegation or conduct that would rise to the level of a constitutional or statutory violation, entitling him to relief under 42 U.S.C. §1983, nor has he shown that they were deliberately indifferent to his Eighth Amendment rights. Because the plaintiff has failed to state a cause of action against the defendants, summary judgment should be granted. Furthermore, the defendants argue that plaintiff has not shown he exhausted his administrative remedies regarding the claims against them. Finally, they note that all of plaintiff's claims were mooted by his transfer away from NRJ&CF.

Attached to their motion to dismiss and alternative motion for summary judgment, the Aramark defendants provide copies of sample daily menus served at the NRJ&CF to show the variety of nutritional foods served there. The Aramark defendants also provide an affidavit from defendant Robert Yocum, attesting that the food and portions served at the NRJ&CF were approved by a licensed dietitian and by the West Virginia Department of Health and Human Services; the Centers for Disease Control and Prevention of the U.S. Department of Health and Human Services, and the Food Safety and Inspection Service of the U.S. Department of Agriculture. Yocum avers that the food temperature is measured to ensure proper temperature

when placed on the insulated trays, which maintain temperatures for four hours and that the meals are always served within one and a half hours. All trays, dishes, cups and eating services are sanitized in a commercial dishwasher regularly inspected and approved by the West Virigina Department of Health and Human Resources, and inspected and serviced monthly by Ecoserve Cleaning to ensure sanitation and proper function. Further, the facility has a twice-weekly demineralization schedule to remove water spots from glasses. Yocum also asserts that the defendant Joseph Neubauer was not personally involved in, and never directed or participated in the provision of the foods at the NRJ&CF, nor did he acquiesce to or sanction any policy or practice alleged in the plaintiff's complaint. Defendant Mark Geddes also provided an affidavit, denying his personal involvement in the food operations at the NRJ&CF, noting that as a General Manager of Aramark, his service territory does not include West Virginia; he never directed or participated in any policy or practice alleged by the plaintiff, and that he never had any contact with the plaintiff and had no knowledge of his grievances until plaintiff filed suit.

**D.** **The Plaintiff's Response to the NRJ&CF Defendants' Motion to Dismiss**

In his reply to the NCF Defendants' Motion to Dismiss, the plaintiff reiterates his claims that the living conditions and facilities of the NRJ&CF are unsanitary, dangerous, and violated the Eighth Amendment. Additionally, the plaintiff argues even though the NRJ&CF defendants' position is that his claims were mooted by his transfer away from the NRJ&CF, he still has a claim for monetary damages. He attaches a copy of his Motion to Suppress Removal from Facility; an affidavit by another prisoner and two affidavits by him, reiterating his claims.

**E.** **The Plaintiff's Response to the Aramark Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment**

In his response to the Aramark defendants' motion to dismiss and alternative motion for summary judgment, the plaintiff reiterates the original arguments and complaints present in the

complaint, attaching another inmate's hand-written notes regarding various NRJ&CF kitchen deficiencies; a copy of an April 16, 2010 NRJ&CF "Job Assignment," assigning him to work in the kitchen; and an affidavit by another prisoner and an affidavit of his own in support of the same. He avers that he is suing the Aramark defendants in their individual and official capacities, and that he has exhausted his administrative remedies. The plaintiff denies that his transfer away from the NRJ&CF moots his claims for injunctive relief, arguing that the defendants deliberately transferred him away in order to moot his claims.[8] He argues that it is possible that as a state regional jail prisoner, he could be transferred back to the NRJ&CF at any time, and thus his claims are not moot.

**F. Aramark Defendant's Reply to the Plaintiff's Response to Aramark Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

In their reply to the plaintiff, the Aramark defendants aver that food service workers at the NRJ&CF comply with all applicable safety standards; wear new, clean, disposable hair nets and gloves while handling food; their clothing is washed three times more frequently than other inmates' clothing; and they must undergo security and health screenings to work in the kitchen. Salads are prepared fresh and served the same day. Leftovers are discarded after two days. Plaintiff's allegation that the food on inmates' trays is contaminated by food spills from trays situated above is baseless; even assuming it occurred, all trays are sanitized in commercial line dishwasher, thus all surfaces are fully sanitary. Additionally, messy food trays do not rise to the level of a constitutional violation. Food is properly heated to 165 degrees and chilled to 41 degrees or below and temperatures are continuously measured and maintained at safe levels. The kitchen area is treated by a professional exterminator monthly, and is regularly inspected by the West Virginia Department of Health and Human Resources. Plaintiff has failed state a valid

---

[8] The plaintiff does not appear to recognize that the Aramark defendants, as employees of a food service company, had nothing to do with his transfer to another facility.

Eighth Amendment claim and has not even alleged he ever suffered any adverse health diet-related condition. Plaintiff's allegations are absurd, meritless, and should be dismissed with prejudice.

## III. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); see also <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id)**.**

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a

scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp</u>., 475 U.S. 574, 587-88 1986).

## IV. <u>Analysis</u>

### A. <u>Prison Conditions</u>

In general, the Eighth Amendment prohibits "cruel and unusual punishment." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

It must be remembered that "the Constitution does not mandate comfortable prisons" and prisons "cannot be free of discomfort." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981). Therefore, a deprivation of a basic human need is "only those deprivations denying 'the minimal

civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To act with a "sufficiently culpable state of mind," a prison official must not only know of the facts leading to the deprivation, but also know that deprivation would expose an inmate to a certain danger. See Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002); See also, DeBlasio v. Johnson, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000). A constitutional violation can be shown if a prison official shows deliberate indifference to the inmate's health or safety. Farmer v. Brennan, *supra* at 828.

## 1. **Dining Facility/Food**

In the plaintiff's complaint, he alleges the NRJ&CF defendants were aware of the unsanitary conditions of the NRJ&CF's dining area and food preparation process but did nothing to correct the problem. (Dkt.# 28-1 at 8). The Eighth Amendment requires prisons to provide food that is not "an immediate danger to the health and wellbeing of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983). However, as long as a sufficient diet is provided, prison food does not rise to the level of Eighth Amendment violation. Freeman v. Trudell, 497 F. Supp. 481, 482 (E.D. Mich. 1980); Lovern v. Cox, 374 F. Supp. 32, 35 (W.D. Va. 1974).

The plaintiff's claim that the processed meats served in the NRJ&CF are too high in cholesterol,[9] contain "cancer causing elements," leading to obesity, diabetes and various other health problems, is insufficient, because the plaintiff has failed to allege any immediate danger. O'Keefe v. Goord, 77 F. App'x 42, 44 (2nd Cir. 2003). Further, there is no evidence that any

---

[9] The undersigned notes that most of the food labels (Dkt.# 28-3 at 5 – 8) plaintiff attaches as proof of the substandard processed meat products served at NRJ&CF are for turkey products. Turkey is a low-fat meat and thus is lower in cholesterol than many other meats.

defendant in this complaint acted with a culpable state of mind. All food served in the NRJ&CF met intake guidelines, was prepared from menus created by certified dieticians, and was properly inspected. (Dkt.# 61-1 at 3). Moreover, plaintiff's allegations about the sufficiency of the food are meritless; he has not alleged, let alone shown that he suffered from malnutrition, lost any weight, or suffered any physical detriment at all, from not getting enough to eat.[10] See Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999)(inmate's claim of missing eight meals in seven months was frivolous; to sustain such a claim, an inmate must allege "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet"). Thus, this claim does not rise to the level of a constitutional violation and should not proceed.

In regards to the plaintiff's complaint about the NRJ&CF's lack of a dining hall, courts have permitted prisons to place dining halls on their tiers. Merriweather v. Sherwood, 518 F. Supp. 355, 359 (S.D.N.Y. 1981). Again, the plaintiff has failed to show that the placement of the NRJ&CF's dining hall is sufficiently serious to state a claim under § 1983.

### 2. Cell Night Light

The plaintiff alleges the night light present in his cell disrupts his sleep, posing "a risk to my health, because without proper rest a person can get ill quicker because of the immune system being weakened." (Dkt.# 28-1 at 19). Assuming the low-wattage night light[11] does, at times, interrupt the plaintiff's sleep, the plaintiff's claim still fails to allege an actual claim. Not only does he admit he has not actually been harmed, but cell night lights are not used as

---

[10] To the contrary, a May 24, 2012 West Virginia Division of Corrections Offender Search printout on the plaintiff, attached to the NRJ&CF defendant's motion to dismiss, identifies him as an inmate at Huttonsville Correctional Center, and includes his photograph, apparently taken shortly after his May 16, 2012 arrival there from NRJ&CF. Despite the allegedly inadequate diet he claims he received at NRJ&CF, he appears robust, and is described as being 6'5" tall and weighing 270#. (Dkt.# 61-2 at 1).

[11] Night lights at the NRJ&CF each contain a 5 watt bulb. If requested, prisoners are given an index card to cover the light to reduce the illumination. (Dkt.# 61-1 at 13).

punishment, but for security purposes. A night light serves a functional purpose, as it allows officers to view the cell and monitor inmates' actions and safety. (Dkt.# 61-1 at 12-13). The functionality of a night light is a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380 (4th Cir. 1993). Furthermore, the plaintiff can avail himself of an index card to help minimize the light upon request, a clear indication the NRJ&CF staff was not deliberately indifferent.

**3. <u>Cell Plumbing</u>**

The plaintiff alleges that sometimes when the cell toilets are flushed, the contents flow into an adjacent cell toilet before they finally settle and drain appropriately. The plaintiff contends the NRJ&CF defendants disregarded his concerns about disease exposure from sewage drainage and back flush problems in the toilets.

In their motion to dismiss, the defendants acknowledge an "unpleasant" "plumbing flaw" in the prison, (Dkt.# 61-1 at 14) but maintain the plumbing error does not rise to the level of a constitutional violation. (<u>Id</u>.)

The occasional error of toilets flushing improperly is not an appropriate claim under the Eight Amendment. <u>Smith v. Copeland</u>, 87 F.3d 265, 269 (8th Cir. 1996)(finding no constitutional violation when the plaintiff's cell toilet overflowed in his cell for four days). Here, there was no overflow, stagnation, or any other serious sewage issue that could be interpreted as "sufficiently serious," to qualify as a claim under the Eighth Amendment. Additionally, the West Virginia Office of Environmental Health Services is aware of the plumbing issue and has advised the problem does not expose the inmates to any health risk. (Dkt.# 61-1 at 15).

**4. <u>Cell Ventilation</u>**

The plaintiff repeatedly alleges generally that the cell ventilation system is inadequate, and that the NRJ&CF defendants "allow it to continue . . . and . . . ignore the problem[.]" (Dkt.# 28-8 at 5). Although he contends he has "been injured through my health . . . because of the ducts" and alleges suffering "stress," (Dkt.# 28 at 13) nowhere does he identify any specific health condition directly caused by the allegedly inadequate air flow, or describe any treatment sought or received for such a condition.

The Constitution "does not guarantee a certain type of ventilation system or a certain rate of air exchange." Bolton v. Goord, 992 F. Supp. 604, 628 (S.D.N.Y. 1998). Furthermore, the NRJ&CF defendants aver that contrary to plaintiff's claims, there are intake vents in the cells; and a new ventilation system was installed in 2010. (Dkt.# 61-1 at 7). Since that time, the system is regularly inspected and approved by TAB Technologies Testing and Balancing as well as the West Virginia Office of Environmental Health Services. (Id.) The defendants were not deliberately indifferent to the plaintiff's health or safety nor has the plaintiff stated any actual harm from the ventilation system. Therefore, this claim should be dismissed.

### 5. **Passive Recreation, Proper Exercise Areas and Equipment**

The plaintiff alleges the defendants denied him passive recreation on the occasions he was housed in the NRJ&CF's C2 housing unit. The C2 housing unit does prohibit passive recreation, however inmates are afforded recreation time outdoors in the recreation yard.[12] Plaintiff further alleges NRJ&CF does not provide a proper gymnasium with sufficient exercise equipment, complaining that the gym only has two basketball hoops and a heavy bag.

In regards to prison policies, the Supreme Court has noted "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes,

___
[12] Recreation times at the NRJ&CF are from 8:30 a.m to 10:30 a.m.; 1:30 p.m. to 3:30 p.m.; and 5:30 p.m. to dusk. (Dkt.# 61-1 at 11).

cannot be free of discomfort. Thus, these considerations properly are weighed by the legislature and prison administration rather than a court." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Concerning the prohibition of passive recreation in housing unit C2 and insufficient gym opportunities in general at NRJ&CF, the plaintiff has not stated an actual claim under the Eighth Amendment, thus these claims should be dismissed. Accordingly, the defendants have not shown any deliberate indifference to the plaintiff and the recreation policy of the NRJ&CF is a discretionary policy based upon the safety and practicalities of housing inmates.

## 6. Protective Custody/Co-Mingling of Inmates

The defendant alleges the NRJ&CF defendants were negligent in housing general population inmates with "protective custody inmates."[13] (Dkt.# 28-1 at 15). The plaintiff alleges a fear for his safety from an increased risk of violence. Typically, an inmate must show some physical harm to satisfy an Eighth Amendment claim. Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997)(finding psychological harm and deterioration while in protective custody for two months waiting for transfer to another facility resulting from living in constant fear of fellow prisoners, failed to establish compensable injuries under Eighth Amendment).

Here, in addition to this claim being moot, because the plaintiff is no longer housed at NRJ&CF, the plaintiff has not alleged any physical injury from any other inmates while incarcerated at the NRJ&CF. Because the plaintiff has failed to state a cognizable claim under § 1983, the claim should be dismissed.

## 7. Unsanitary Conditions in the Showers

---

[13] The plaintiff is incorrect stating the NRJ&CF is a protective custody facility. Two types of inmates are incarcerated at the NRJ&CF: (1) general population inmates and (2) special management inmates. Special management inmates are inmates who are housed at the NRJ&CF to be kept safe from inmates in other facilities. (Dkt.# 61-1 at 9)

Although the defendant alleges the NRJ&CF defendants are deliberately indifferent to health risks to inmates from black mold in NRJ&CF's showers, he simultaneously inadvertently avers the opposite, admitting that whenever inmates complain about the mold, NRJ&CF's paint crew is sent in to scrape and repaint the showers. Further, although the plaintiff implies that the defendants deliberately permit the mold to grow "so inmates catch MRSA," in fact, MRSA cannot be transmitted by exposure to mold.[14] Moreover, the NRJ&CF defendants point out that the response to plaintiff's particular grievance over this issue indicates the showers are cleaned and inspected daily, mold-preventive steps are taken to inhibit the mold's growth, and when mold does grow, steps are taken to eradicate it (Dkt.# 61-1 at 16), thus further negating plaintiff's claim of deliberate indifference. Therefore, this claim should be dismissed.

### 8. **Disregarding of Plaintiff's Administrative Grievances and Retaliation for Filing**

Plaintiff contends that all of the NRJ&CF defendants routinely ignored his administrative grievances and that he was retaliated against for filing them. The NRJ&CF defendants did not respond to this allegation.

The plaintiff and the NRJ&CF defendants have each attached numerous grievances filed by the plaintiff; each grievance filed reflects a timely and appropriate response by the defendants. Thus, plaintiff's claim that his grievances are "routinely ignored" is meritless. Moreover, the response to his grievance filed over his particular allegation of retaliation by frequent cell-shakedowns indicates that routine cell searches are merely part of operational policy, which the plaintiff is no more exempt from than any other inmate. (Dkt.# 28-5 at 3).

---

[14] MRSA is caused by a particularly virulent strain of antibiotic-resistant staphyloccus infectious bacteria, transmitted by skin-to-skin contact or by touching contaminated objects. Molds, on the other hand, are microscopic organisms, ubiquitous in the environment, which thrive in areas of high humidity. Mold produces airborne spores, which, in sufficient numbers, may aggravate respiratory allergies, but do not cause infections. See generally http://www.niaid.nih.gov/topics/antimicrobialresistance/examples/mrsa/Pages/default.aspx and http://www.health.ny.gov/publications/7287/

Finally, plaintiff's response to the NRJ&CF defendants' motion to dismiss further alleges that the defendants deliberately transferred him to another facility, again in retaliation, in order to moot his claims before this Court.[15] Moreover, even if the claims in this petition were not mooted by the plaintiff's transfer away from NRJ&CF, they still fail to state a claim upon which relief can be granted. Not only has the plaintiff failed to state a constitutional claim in this regard, he has not shown the defendants possessed a culpable state of mind. Therefore, this claim should be dismissed.

## 3. __Aramark Defendants__

Plaintiff asserts that the Aramark defendants, Joseph Neubauer, Chairman and former President and CEO of Aramark Corporation, Mark Geddes, General Manager for Aramark Correctional Services, LLC, and the defendant Robert Yocum, Aramark Correctional Services, LLC Food Service Director were all deliberately indifferent to the health and nutritional risks their actions caused him.

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat*

---

[15] The plaintiff alleges several unfortunate incidents of theft of his property and false accusations made against him since his arrival at Huttonsville, implying they are further proof of harm from the defendants' actions in transferring him in retaliation, that would not have occurred had only his motion to suppress his transfer from the NRJ&CF not been denied. (Dkt.# 79 at 5). It appears that the plaintiff is inappropriately trying to raise new claims that occurred after the filing of this case, that are unrelated to the issues raised in this case.

*superior* cannot form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).

In this case, defendants Neubauer and Geddes both aver that they had no personal involvement in, or ever directed or participated in the provision of the food at the NRJ&CF, nor did they acquiesce to, or sanction any policy or practice alleged in the plaintiff's complaint. Defendant Geddes further denies that his territory even includes West Virginia, where the NRJ&CF is situated. Although the plaintiff contends he is suing them in both their individual and official capacities, he makes no specific allegations against either, other than a general, conclusory allegation that they "ARE basically C.E.O.'s of a major company that should have knowledge of the food that they serve[.]"[16] (Dkt.# 80 at 4). He does not assert that either defendant was personally involved in any violation of his constitutional rights. Rather, despite his response to the Aramark defendants' motion to dismiss otherwise, it appears that the plaintiff merely names defendants Neubauer or Geddes in either their official or supervisory capacities. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. <u>Id</u>. at 166. In order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>see</u> <u>Philips v. Pitt Cnty.</u>

---

[16] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Migdal v. Rowe Price-Fleming International, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

Mem'l. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). "[A]ssum[ing] without deciding that Aramark acted under color of state law for purposes of §1983 by performing the traditional governmental function of providing food service at the Jail," Coleman v. Aramark, 31 F. App'x. 808, 809 (4th Cir. 2002) (unpublished per curiam), "a private corporation is liable under §1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights," Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999) (emphasis omitted). Not all state action rises to the level of a custom or policy. Plaintiff cites no written or formal policy that Aramark implemented that violated his constitutional rights. Instead, he merely alleges isolated incidents of allegedly improper food service that he contends potentially *could have* individually affected him; nowhere does he allege he was actually harmed. Nor has he alleged any clear, consistent pattern of constitutionally-deficient food service of which Aramark had notice, and failed to act upon. See Broyles v. Corr. Med. Servs., No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) ("[B]are allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief."); Page v. Kirby, 314 F.Supp.2d 619, 622 (N.D.W.Va. 2004). In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). Again, the plaintiff fails to assert that a specific policy or custom of Aramark played a part in the alleged violation of his constitutional rights.

As to supervisory capacity, as previously noted, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."

Vinnedge, *supra*.  When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible.  Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[17]

        In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability as to defendants Neubauer and Geddes. Consequently, the plaintiff fails to state a claim against the defendants Neubauer and Geddes, and thus he cannot maintain an action against them.

        As for plaintiff's claims that defendant Yocum, acting on behalf of Aramark, personally violated his constitutional rights by serving unwholesome, substandard foods, while plaintiff attaches several copies of labels from food allegedly served at the NRJ&CF, they are all for poultry products or eggs, foods which constitute reasonable sources of dietary protein. (Dkt.# 28-3 at 4 – 9).  Plaintiff also attaches  a USA Today article titled "Processed, Red Meat Linked to

---

[17] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury."  Shaw, 13 F.3d at 799.  "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

Diabetes,"[18] (Dkt.# 28-3 at 1); and a copy of an article from the Prison Legal News, titled "Aramark Discontinues, Loses Prison "Food Service Contracts." (Dkt.# 28-3 at 2). Neither article provides any evidentiary support for plaintiff's claims as to what happened at NRJ&CF. On the other hand, the attached affidavits of defendant Yocum and copies of sample menus actually served at the NRJ&CF are evidence that Aramark, and defendant Yocum acting on its behalf, provided safe, wholesome, nutritious and adequate diets at the NRJ&CF. (Dkt.# 64-2 at 1-2, Dkt.# 81-1 at 1, and 62-3 at 1 - 4). Thus, plaintiff has failed to state a claim against defendant Yocum upon which relief can be granted, nor has he shown Yocum had a culpable mind, and thus the claims against him should be dismissed as well.

**4. John or Jane Doe defendants of the American Correctional Association and John or Jane Doe defendants of the Regional Jail Authority**

Plaintiff makes vague, conclusory allegations that various unnamed John or Jane Doe individuals at the American Correctional Association conducted inspections of the NRJ&CF in September 2011 and "knowingly turned in false reports," because they did not report all of the claims he raises in his complaint. Further, he alleges that various John or Jane Doe policy makers who oversee the NRJ&CF who "obtain reports and Memos, concerning the conditions of the facility, and failed to take corrective action." (Dkt.# 28-2 at 6).

A plaintiff may name "Jane Doe" as a defendant when the identify of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980). Plaintiff initiated this action on November 7, 2011. On April 30, 2012, the plaintiff was given an additional thirty days in which

---

[18] Nowhere does plaintiff complain about being served red meat, so it is unclear why he attached this article. Further, the "processed meat" labels he did provide were nearly all poultry food products, which are lower in fat and cholesterol than red meat.

to identify the John or Jane Doe defendants. He failed to do so within that time frame. On May 24, 2012, summonses were issued for all of the named defendants. While service was effected on the other defendants, no summons could be ever be issued to the John and Jane Doe defendants because their identities, if they exist at all, remained unknown. Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); see also, Bush v. City of Zeeland, 74 Fed. Appx. 581, 2003 WL 22097837 at *2 (6th Cir. 2003)(citations omitted). Considering that plaintiff had sufficient time to identify all the defendants in this action and noting plaintiff's lack of diligence in doing so, the Court recommends that Plaintiff's claims against all unidentified John and/or Jane Doe defendants be dismissed without prejudice for failure to timely effect service.

## V. <u>Recommendation</u>

For the reasons set forth above, the undersigned recommends that the NRJ&CF Defendants' First Motion to Dismiss (Dkt.# 61) be **GRANTED**, the Aramark defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt.# 62) be **GRANTED** and plaintiff's § 1983 complaint (Dkt.#28) be **DISMISSED with prejudice for failure to state a claim upon which relief can be granted and as moot**. **Within fourteen (14) days** after being served with a copy of this Recommendation, **or by October 9, 2012**, any party

may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Court Judge. **Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 25, 2012

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE
