```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

WILTON FREDERICK BLAND,

    Plaintiff,

v.                                         Civil Action No. 5:11CV157
                                                          (STAMP)
JAMES RUBENSTEIN, D.O.C., Commissioner,
JAMES SPENCER, N.C.F.[1] [sic], Jail Administrator,
KAREN PSZCZOLKOWKSI, A.W.O.,
MICHAEL PSZCZOLKOWKSI, Recreation Director
/Acting Warden of Prog [sic],
GREGORY YAHANKE, Warden of Programs,
RICHARD WINDT, A.C.A. Manager,
ROBERT YOCUM, N.C.F. Kitchen Sup.,
EDWARD LITELL, Lt. Kitchen and Sanitation/Maintenance,
JOHN OR JANE DOE, American Correctional Association,
JOHN OR JANE DOE, Regional Jail Authority[2] [sic],
JOSEPH NEUBAUER, President, Aramark Corporation,
MARK GEDDLES, General Manager, Aramark Corp.
and EVELYN SEIFERT, Warden,

    Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE,
DENYING AS MOOT POST-OBJECTIONS MOTIONS,
AND DENYING MOTION TO FILE EXCESS PAGES**

I. Procedural History

On November 7, 2011, the pro se[3] plaintiff, then an inmate at the Northern Regional Jail and Correctional Facility ("NRJCF"), initiated this action in this Court by filing a civil rights

---

[1] The correct name of the facility that defendant James Spencer is the Administrator for is the Northern Regional Jail and Correctional Facility.

[2] The correct name of the Regional Jail Authority is the West Virginia Regional Jail and Correctional Facility Authority.

[3] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

complaint under 42 U.S.C. § 1983.  Pursuant to Local Rule of Prisoner Litigation Procedure 2, it was then referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation.  The magistrate judge conducted a preliminary review, found that the plaintiff's complaint was deficient and directed him to file a complaint on a court approved form.  Following the filing of a number of documents entitled "Notice of Claims," as well as numerous motions, the plaintiff filed a complaint in the proper form, and the plaintiff was granted leave to proceed without prepayment of fees.

Magistrate Judge Seibert then conducted a preliminary review, determined that summary dismissal was not appropriate, and directed that the United States Marshals Service serve the complaint upon the defendants.  At this time, the magistrate judge also determined that, because institutions are not persons under § 1983, the NRJCF and the Regional Jail Authority were not proper defendants.  He thus dismissed them from the case.  The defendants all filed various motions to dismiss and alternative motions for summary judgment, to which the plaintiff responded following the issuance of Roseboro[4] notice.  The Aramark defendants filed a reply to the plaintiff's response to their motion to dismiss, or in the alternative, motion for summary judgment.

---

[4] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

Following the full briefing of the defendants' motions, Magistrate Judge Seibert issued a report and recommendation recommending that this Court dismiss the plaintiff's complaint in its entirety. He informed the parties of their right to file objections to his report within fourteen days of receiving a copy thereof. The plaintiff filed objections which reiterate his claims, and also filed a number of motions regarding the claims made in his complaint.

## II. Facts

In his complaint, the plaintiff alleges ten claims of allegedly unsanitary, unsafe, and unconstitutional conditions at the NRJCF which allegedly constitute cruel and unusual punishment in violation of his Eighth Amendment rights. The claims are as follows:

1. The NRJCF has inadequate dining facilities, and the inmates are required to eat in the housing unit which is also used as the passive recreation area. Further, due to poor ventilation, dust and dirt falls onto inmates' food while they eat.

2. Food is served in an unsanitary fashion. Cups are not clean and food spills over the sides of trays, causing cross-contamination. The food is served at the incorrect temperatures because the food carts are old and unheated, and the kitchen workers are not provided with proper clothing while preparing food.

3. The food served is nutritionally inadequate. Fresh fruits are not served, salads are wilted, and main courses are not

served at proper temperatures.  Further, the plaintiff maintains that the food is of poor quality "chicken scratch," and the food contains highly processed meats which are high in cholesterol, increasing inmates' risk of health problems.  The plaintiff also argues that the food workers are encouraged to create smaller portions by shaking spoons when serving.

4. Night lights remain illuminated 24 hours a day, and inmates are unable to turn them off at any time.  The plaintiff argues that this disrupts his sleep.

5. When an inmate flushes the toilet in his cell, there is a problem with back flush and sewage drainage such that the toilet is actually flushed into the toilet in the next cell before draining.

6. The ventilation in the cells at NRJCF is insufficient. There are no intake vents in the cells, so no fresh air enters, and stale air remains in the cell.  This stale air could cause health problems.

7. While housed in the C2 pod, the plaintiff is routinely denied passive recreation.

8. NRJCF lacks proper exercise equipment in the gymnasium. The gymnasium also has no place to sit.

9. General population inmates are placed together with protective custody inmates and the plaintiff believes that this presents a substantial risk of violence.

10. The showers are not cleaned properly and are unsanitary. Black mold accumulates in the showers and inmates are not provided with adequate cleaning chemicals to sterilize them. This could lead to Methicillin-Resistant Staphylococcus Aureu, or MRSA, and other health issues.

The plaintiff also raises a claim (Claim 11) alleging that inmate grievances are routinely ignored and administrators retaliate against those inmates who file them. The plaintiff requests both damages and injunctive relief which would require the NRJCF to fix the allegedly unsafe and unsanitary conditions at the facility. The defendants maintain in their motions to dismiss that all of the plaintiff's claims fail to demonstrate an Eighth Amendment violation related to cruel and unusual punishment. Further, they argue that the plaintiff has failed to state a claim relating to the co-mingling of inmates and the treatment of inmate grievances. Finally, the defendants claim that they are entitled to qualified immunity.

### III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the plaintiff filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed de novo.

## IV. Discussion

### A. Prison Conditions

The plaintiff asserts that the conditions that he names in his complaint amount to cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.[5] In order to survive summary judgment with regard to these claims, the plaintiff must provide sufficient evidence to create a genuine issue of material fact both that: (1) objectively, the deprivation of a basic human need was "sufficiently serious," and (2) subjectively, prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. Prisons are not required to provide comfortable accommodations. Accordingly, deprivations of a basic human need that violate the Eighth Amendment are only those that deny "the minimal civilized measure of life's necessities." Id. Further, the "sufficiently culpable state of mind" required to hold the prison official liable for an Eighth Amendment violation is only shown when there is sufficient evidence that the prison official not only knew of the existence of the facts or situations resulting in the deprivation, but also that he recognized that the deprivation would lead to certain harm to the inmate. See Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002).

---

[5]The Eighth Amendment right against cruel and unusual punishment applies to the states through the Due Process Clause of the Fourteenth Amendment. See Wilson v. Seiter, 501 U.S. 294 (1991).

6

1.  <u>Claims One, Two, and Three: Dining Facilities/Food</u>

This Court agrees with the magistrate judge in his assessment that the dining facilities and the food served at the NRJCF do not deprive the plaintiff of a basic human need, and thus do not amount to Eighth Amendment violations.  Prison food can only rise to the level of an Eighth Amendment violation when the food served poses "an immediate danger to the health and well being of the inmates who consume it."  <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983).  The plaintiff here has failed to allege that the food served and the manner in which it is served poses an immediate danger to inmates.  Rather, he asserts only that (1) the food is processed and high in cholesterol and could lead to health problems and (2) the food is served at incorrect temperatures and in an unsanitary manner.  None of the plaintiff's allegations in this regard represent food conditions that pose an immediate danger to inmates, and thus they are insufficient to show an Eighth Amendment violation.  <u>Id.</u>  Further, as has been shown by the Aramark defendants, all food served at NRJCF, as well as the manner in which it is served, meets intake guidelines, has been properly inspected, and is created by certified dieticians.  This Court also agrees with the magistrate judge that the plaintiff's claims in this regard must fail because he has not even alleged that he has actually suffered any negative consequences from the food service at NRJCF; rather, he simply complains generally about the same.

Further, as the magistrate judge finds, the simple fact that the NRJCF places its dining area on the tier does not constitute a constitutional violation. Such arrangements have been approved by courts in the past, and the plaintiff has failed to allege any danger that this arrangement causes for inmates which rises to the level of an Eighth Amendment violation. See Merriweather v. Sherwood, 518 F. Supp. 355, 359 (S.D.N.Y. 1981).

2. Claim Four: Cell Night Light

Further, this Court agrees with the magistrate judge's determination that the cell night lights serve a safety purpose and are not used for punitive reasons. Further, the plaintiff has also admitted with regard to this claim that he has suffered no actual harm. The magistrate judge also pointed out that inmates are given an index card to dim the five watt bulbs in their cell night lights if the light is bothersome so as to lessen the discomfort while nonetheless retaining the utility of the lighting. This Court agrees with the magistrate judge that a dimmed five watt bulb with functional purpose during the night is merely a "routine discomfort" of prison life that is not an Eighth Amendment violation. Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993).

3. Claim Five: Cell Plumbing

This Court also finds that Magistrate Judge Seibert was correct in concluding that the back flush problems in the cells at NRJCF do not rise to the level of an Eighth Amendment violation.

While the defendants acknowledge this problem and concede that it is "unpleasant," as the magistrate judge cited, other courts have found much more serious plumbing problems to not rise to the level of a constitutional violation. See Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996). In this case, the plaintiff is not exposed to back-up into his cell, and the back flush does not stagnate. Further, as Magistrate Judge Seibert notes, the West Virginia Health Department has advised that the back flush issue at NRJCF does not expose inmates to any health risk.

4. Claim Six: Cell Ventilation

The plaintiff claims that the cell ventilation is inadequate at NRJCF, and that the defendants are aware of this but have done nothing to correct it. However, not only has the plaintiff failed to assert any actual harm that he has suffered as a result of the ventilation,[6] but the NRJCF's new ventilation system, installed in 2010, has been inspected and approved by TAB Technologies Testing and Balancing, and by the West Virginia Office of Environmental Health Services. Accordingly, the plaintiff has also failed to support his claim of Eighth Amendment violations as to Claim Six.

---

[6] As the magistrate judge notes, the plaintiff alleges general harm as a result of the ventilation, namely that he has "been injured through his health" and that he has suffered "stress." ECF No. 28 *13. However, no specific injury is alleged, nor has evidence been provided of any injury that he alleges generally.

5. <u>Claims Seven and Eight: Deprivation of Passive Recreation and Inadequate Gymnasium Facilities</u>

In Claim Seven, the plaintiff argues that while he was housed in the C2 unit of the NRJCF, he was denied passive recreation. However, it is clear that the policy of NRJCF is not to prohibit passive recreation in that unit, but to simply allow the inmates housed there general recreation time in the gymnasium or the recreation yard multiple times each day rather than to specifically provide for passive recreation. With regard to Claim Eight, the plaintiff argues that the gymnasium facilities at NRJCF are inadequate, consisting only of two basketball hoops and a heavy bag, and also have nowhere to sit down.

As the magistrate judge notes, with regard to prison policies, the Supreme Court has found that "the Constitution does not mandate comfortable prisons . . . and thus, these considerations properly are weighed by the legislature and prison administration rather than a court." <u>Rhodes</u>, 452 U.S. at 349. While the plaintiff may be unsatisfied with the recreation policies in the C2 unit and with the gymnasium facilities, these conditions do not rise to the level of an Eighth Amendment violation. Further, the plaintiff has again failed to allege any actual harm that he has suffered from the recreation policy and/or the gymnasium facilities. As such, Claims Seven and Eight must also fail.

6. <u>Claim Nine: Co-Mingling of Protective Custody Inmates with General Population</u>

Again, the plaintiff has failed to assert that he has suffered any injury as a result of any co-mingling of protective custody inmates with general population inmates or as a result of the state of the chemical cabinets. While the plaintiff does allege that he fears for his safety as a result of this alleged co-mingling, this Court agrees with the magistrate judge that, in order to maintain an Eighth Amendment claim, some sort of actual physical harm must be alleged. <u>See</u> <u>Doe v. Welborn</u>, 110 F.3d 520, 524 (7th Cir. 1997). The magistrate judge was thus correct in finding that the plaintiff thus has failed to assert a cognizable § 1983 claim as to this claim as well.

7. <u>Claim Ten: Unsanitary Conditions in the Showers</u>

This Court further agrees with the magistrate judge's conclusion that the plaintiff has also failed to allege a claim of deliberate indifference as to the conditions of the showers at NRJCF. As the magistrate judge points out, while the plaintiff claims that the staff at the jail are indifferent to the mold in the showers, he also admits that when complaints are lodged regarding the same, work crews are sent to scrape and repaint the showers. Additionally, in response to a grievance filed by the plaintiff regarding this complaint, the NRJCF defendants explained that the showers are cleaned and inspected daily, that mold-preventative steps are taken, and that mold is removed whenever it

does grow. As such, it is clear that the plaintiff cannot show that the NRJCF defendants are deliberately indifferent to the cleanliness of the showers. Finally, this Court also notes that the plaintiff has yet again failed to allege any personal harm that he has suffered as a result of the condition of the showers.[7]

B. Disregarding of Grievances

Finally, the plaintiff claims that, at NRJCF, inmate grievances are routinely ignored, and that inmates are retaliated against when they file grievances. However, as the magistrate judge notes, both parties have attached copies of grievances filed by the plaintiff, and all reflect timely and appropriate responses by the NRJCF staff. Accordingly, the plaintiff's claim that grievances are ignored is without merit.

In his objections to the magistrate judge's report and recommendation, the plaintiff claims that his grievances were ignored because the defendants did not respond to them by correcting the problems of which he complained. However, simply because the response to his grievances was not the one for which the plaintiff had hoped does not mean that his grievances were

---

[7]This Court notes that, throughout his objections to the magistrate judge's report and recommendation, the plaintiff repeatedly claims that the policies and conditions at other West Virginia Division of Corrections Facilities are much "better" and that these facilities do not have the "problems" that he claims exist at NRJCF. However, simply because the plaintiff believes that other facilities offer more comfortable or "better" conditions, does not mean that the policies and conditions at NRJCF violate the plaintiff's Eighth Amendment rights. This Court finds that all of he conditions reviewed herein provide inmates with the basic necessities of civilized life. Wilson, 501 U.S. at 298.

ignored. It is clear to this Court that the defendants responded to each of the plaintiff's grievances, and addressed his concerns. That the plaintiff's grievances did not result in affirmative action to change the conditions of which he complained does not result in any constitutional violation.

Finally, as the magistrate judge points out, the plaintiff also claims that the defendants transferred out of NRJCF in retaliation for filing grievances and for filing this case. Setting aside the issue of whether any of the defendants to this civil action could have had any hand in the plaintiff's transfer, the plaintiff has presented no evidence outside of his assertion, that the transfer had anything to do with this case or with any grievances that he filed. As such, this claim too must fail.

## V. Conclusion

For the reasons described above, the report and recommendation of the magistrate judge is AFFIRMED and ADOPTED in its entirety. Accordingly, the NRJCF defendants' motion to dismiss is GRANTED. The Aramark defendants' motion to dismiss or, in the alternative, motion for summary judgment is also GRANTED. It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he

must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: March 5, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE